## UNITED STATES v. FRENCH et al.

### No. 10962.

Circuit Court of Appeals, Eighth Circuit.
April 6, 1938.

WOODROUGH, Circuit Judge, dissenting.

Earl C. Crouter, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., Edwin G. Moon, U. S. Atty., of Ottumwa, Iowa, C. I. Level, Asst. U. S. Atty., of Denison, Iowa, and William R. Sheridan, Asst. U. S. Atty., of Keokuk, Iowa, on the brief), for the United States.

Herbert E. Sitz and Charles D. Waterman, both of Davenport, Iowa (Lane & Waterman, of Davenport, Iowa, on the brief), for appellees.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges.

STONE, Circuit Judge.

May 17, 1929, a check refunding an overpayment of income tax was received by French and Hecht, a partnership, in Iowa. May 11, 1931, this action was brought against the individuals composing the partnership on the ground of erroneous refund. After various proceedings, defendant Hecht filed a motion (in the form of an amendment of an earlier motion) to dismiss as to him. Among other things, the motion urged that the action was barred by the applicable two-year statute of limitations, Revenue Act of 1928, § 610(b), 45 Stat. 791, 875, 26 U.S.C.A. § 1646(b), because no legal summons had been issued or served within two years from receipt of the refund (United States v. Wurts, 58 S. Ct. 637, 82 L.Ed. ——, decided March 14, 1938)—such service, or at least issuance, being the institution of an action under the Iowa statutes. Thereafter plaintiff filed a motion to amend an original summons and an alias summons. Plaintiff filed a resistance to the motion to dismiss.

A hearing was had on the two motions, at which evidence in the form of a stipulation of facts and an affidavit by Hecht was introduced. From the undisputed evidence, it was clear that a paper (intended as a summons) and another identical paper (intended as an alias summons) had been delivered to the marshal within the statutory limit but service was after such limit. On January 15, 1937, the court entered an order sustaining the motion of Hecht to dismiss and dismissing the action as to Hecht[1] and on January 21, 1937, amended that order by including therein a denial of plaintiff's motion to amend. From these two orders, plaintiff brings this appeal. Appellant presents here three issues: (I) the action was begun within the above applicable statutory limitations; (II) appellee has waived any insufficiency of summons by general appearance; (III) the motion to amend the original and alias summons should have been sustained.

I. Commencement of the Action.

Section 610(b) of the Revenue Act of 1928, 45 Stat. 791, 875, 26 U.S.C.A. § 1646(b), requires suits to recover refund of income taxes to be "begun" within two years after making the refund.

The Conformity Act, 28 U.S.C.A. § 724, requires the existing state "practice, pleadings, and forms and modes of proceeding" to be followed in law cases, and this provision includes the method of bringing actions and the forms of summons. Shepard v. Adams, 168 U.S. 618, 18 S.Ct. 214, 42 L.Ed. 602; United States v. Van Dusen, 8 Cir., 78 F.2d 121.

The pertinent Iowa statutes are sections 11012 and 11055, Code of Iowa, 1927. Section 11012 deals with "Commencement of action" and provides for service by the sheriff or ·by "another person" and provides that "commencement of the action" shall be "the delivery of the original notice to the sheriff" when service is by the sheriff or "the actual service of that notice" where service is by another than the sheriff.

Section 11055 deals with "Original Notice." It declares that an "action in a court of record shall be commenced by serving the defendant with a notice," the contents of which are prescribed therein. The section does not state whether the above-quoted portion refers only to service by other than the sheriff or not. However, the quoted portion can be recon-

---

[1] This order included dismissal as to the other defendants for want of prosecution as to them, but that portion of the order is not under attack and is without the issues here.

ciled with section 11012 by regarding it as referring in this respect only to instances where service is other than by the sheriff. Any other construction would create a conflict between the two sections which, of course, should be avoided if possible. There is another reason why, with this character of issue, section 11012 should be held applicable here. That section is contained in chapter 487 entitled "Limitations of Actions" while section 11055 is contained in chapter 489 entitled "Manner of Commencing Actions." The issue here is whether this action is barred by limitation, therefore, if the two sections are in conflict, it would seem that 11012 should prevail here because it deals with commencement of actions for purposes of limitations. The statute is so construed by the Supreme Court of Iowa. Fernekes v. Case, 75 Iowa 152, 39 N.W. 238; Phinney v. Donahue, 67 Iowa 192, 25 N.W. 126.

The service here was by a deputy marshal which is the equivalent to service by a sheriff. Hence, section 11012 applies and this action was or would be commenced by delivery of an original notice—here a summons—to the marshal. This delivery was, concededly, within the two-year period under section 610(b) of the Revenue Act 1928.

The controversy here, however, is not so much over the date of delivery or of service. It is whether the paper delivered to the marshal was so fatally defective as a summons that it failed as such. Obviously, a paper delivered to the marshal for the purpose of bringing a party into court must contain the necessary requisites.

Section 777 of title 28, U.S.C.A., provides that "No summons * * * shall be abated, arrested, quashed, or reversed for any defect or want of form." Obviously, this provision does not extend to defect or want of substance. While this statute prevails over state law and is without the Conformity Act (Mexican Central Ry. Co. v. Duthie, 189 U.S. 76, 78, 23 S.Ct. 610, 47 L.Ed. 715; Henderson v. Louisville & N. R. Co., 123 U.S. 61, 64, 65, 8 S.Ct. 60, 31 L.Ed. 92; Howe v. Haterius, 8 Cir., 66 F.2d 835, 837; In re Griggs, 8 Cir., 233 F. 243, 244), yet, by its very terms, it does not extend to substantial defects. Therefore, the question here (as to section 777) is whether the defects of the summons here are merely as to form

or as to substance. That matter is to be determined by the state law under the Conformity Act (United States v. Van Dusen, 8 Cir., 78 F.2d 121) unless there is a governing rule of court which is valid. Boston & M. R. R. v. Gokey, 210 U.S. 155, 28 S.Ct. 657, 52 L.Ed. 1002; Shepard v. Adams, 168 U.S. 618, 18 S.Ct. 214, 42 L.Ed. 602; United States v. Van Dusen, 8 Cir., 78 F.2d 121, 123. First we will examine the state law and then a rule of court here cited.

Section 11055, Code Iowa 1927, sets forth the contents of an "original notice" (summons). They are as follows: "a notice, signed by the plaintiff or his attorney, informing him of the name of the plaintiff, that a petition is, or on or before the date named therein will be, filed in the office of the clerk of the court wherein action is brought, naming it, and stating in general terms the cause or causes thereof, and if it is for money, the amount thereof, and that unless he appears thereto and defends before noon of the second day of the term at which defendant is required to appear, naming it, his default will be entered and judgment or decree rendered against him thereon."

This form of summons is applicable where service is made by a sheriff (Cummings v. Landes, 140 Iowa 80, 117 N.W. 22, 24; Hoitt v. Skinner, 99 Iowa 360, 68 N.W. 788, 789; Fernekes v. Case, 75 Iowa 152, 39 N.W. 238), therefore, applicable here where service was made by a deputy marshal.

The portions of the original and of the alias summons here pertinent are identical and are as follows:

"To the Marshal of the Southern District of Iowa—Greeting:

"You Are Hereby Commanded, That you summon G. Watson French, F. H. French, J. L. Hecht, Marion M. French, Anna E. French, and Francis H. French, Executor and Trustee of the Estate of Nathaniel French, deceased late of your District, if they may be found therein, so that they be and appear before the United States District Court for the Southern District of Iowa, at Davenport, Iowa, on the 27th day of October, 1931 to answer to a complaint filed by the United States of America."

Appellee attacks the sufficiency of this paper as a summons upon ten grounds, each being a claimed fatal defect. As to

seven of these grounds, the statements in the paper are sufficient answer and we dismiss such from further consideration. The three remaining are that (a) the summons was not addressed to the defendant; (b) the summons did not state the cause or causes of action or the amount of money claimed; and (c) the summons did not specify the consequences of a failure on the part of the defendant to appear and defend.

It seems clear that the summons lacked each of the above three things. It is clear that section 11055 requires the "notice" (summons) to state "in general terms the cause or causes thereof, and if it is for money [this action is], the amount thereof, and that unless he appears thereto and defends * * * his default will be entered and judgment or decree rendered against him thereon." There is no express requirement that the "notice" shall be directed to the defendant but it is difficult to conceive of a proper notice which would not convey such information in some form. We may, however, lay aside the claimed defect as to direction of the summons to the defendant without examination because it is clear that the summons is fatally defective since there is no description whatsoever therein as to the "cause or causes" of action, nor is there any statement whatsoever of the consequences of a failure to appear and defend, both as required by section 11055.

In Farley v. Carter, 222 Iowa 92, 269 N.W. 34, 35, in considering the requirement as to statement of cause of action and in speaking of this section, the court said: "This necessarily implies the nature or subject of the action, as whether it is founded upon a note, an open account, for trespass, for slander, or for the recovery of real estate, etc." The court there held such a notice to be "fatally defective." 269 N.W. 34, at page 36. Also see Sutton v. Rhodes, 205 Iowa 227, 217 N.W. 626; Blain v. Dean, 160 Iowa 708, 142 N.W. 418, 422; Moody v. Taylor, 12 Iowa 71.

Also, as to statement in a summons of the consequences of failing to appear and defend, the Farley Case is decisive. On page 34 of 269 N.W., the court states: "Among the specifications required of an original notice by section 11055 of the Code are: * * * (4) 'That unless he appears * * * and defends before noon of the second day of the term, * * * judgment * * * [will be] rendered against him.'" On page 35 of 269 N.W., the court states:

"Each of the specific requisites of the statute is of equal rank with the others, and a failure to include any one is as fatal as the failure to include another. Rhodes v. Oxley, 212 Iowa 1018, 235 N.W. 919.

"In Rhodes v. Oxley, 212 Iowa 1018, 235 N.W. 919, 920, in referring to the failure to comply with the specific requisites of the statute, this court said: 'The specific requisites of the statute are not to be wholly ignored. The statute provides for a certain degree of formality as requisite to confer jurisdiction. For instance, an original notice must be in writing. Oral notice, however emphatic or frequent, will confer no jurisdiction. If the writing is essential to the jurisdictional power of the notice, then it would seem equally as essential that the statutory requisites should be incorporated in such writing. We are of opinion that the defects in this notice cut so deeply as to destroy its essential character as a statutory notice and that for such reason it should be deemed not simply defective, but wholly void.'" Also see United States v. Van Dusen, 8 Cir., 78 F.2d 121, this court, for a similar view concerning a like provision in the Minnesota statutes.

Having examined the state law and determined that the summons and alias summons were fatally defective thereunder, we next consider the effect of a rule of the District Court upon which appellant relies. So far as here pertinent, that rule is as follows: "Actions at law shall be commenced by filing a petition with the clerk upon which a summons shall be issued directed to the defendant, informing him of the name of the plaintiff, that a petition has been filed in the office of the clerk of the court wherein the action is brought, naming it. Except as otherwise provided in these rules, and except as provided for in the laws of the United States in force at the time action is sought to be taken in this court, pleadings and practice and procedure, both before and after judgment, shall be as then prescribed in the laws of the State of Iowa."

We are saved the labor of discussing and determining how far rules of United States District Courts may differ from state practice or whether this particular rule falls on one side or the other of the permissible line of difference. This matter is governed by the recent case of United

States v. Van Dusen, 8 Cir., 78 F.2d 121, in this court. There a summons issued from the District Court of the District of Minnesota was attacked as fatally defective. The Minnesota statute required, among other things, that a summons be directed to the defendant and that it contain a statement of the consequences of failure to appear and defend. The District Court had a rule requiring—as in the rule here—a summons directed to the defendant. In that case, we held the failure of the summons to state the consequences of failure to appear and defend was a fatal deviation from the rule. In this respect, the summons in that case and in this are identical, as are also the rules involved there and here.

Appellant contends, also, that this form of summons has been in use for years and that such usage is sufficient to validate it. Two cases are cited to support this position. They are City of St. Charles v. Stookey, 8 Cir., 154 F. 772, this court, certiorari denied 208 U.S. 617, 28 S.Ct. 569, 52 L.Ed. 647, and Elson v. Town of Waterford, C.C.D. of Conn., 135 F. 247. Neither of these cases has any bearing upon the point to which they are here cited. Nor is there merit in this contention. It is true that a rule of court does not have to be written and formally adopted but may be established by long-continued usage. Payne v. Garth, 8 Cir., 285 F. 301, 309. However, the trouble here is that there is a written and formally adopted rule. Obviously, such a rule cannot be nullified by a custom in procedure. This record affirmatively reveals that the trouble here has not been caused by a form of summons adopted or approved by the District Court which promulgated this rule but that it is a form worked out by the Department of Justice (some years ago) and distributed by it to clerks of District Courts for their use. Apparently, this was done without consideration of differences in state statutes or in the rules of the various districts.

Our conclusion is that both the original summons and the alias summons were fatally defective and that this action was not begun by the delivery of such to the marshal.

II. Waiver by General Appearance.

Several months after expiration of the two-year statutory limitation, appellee (by attorney) joined in a stipulation for continuance of the case. This was a general appearance. Appellant contends that such general appearance was a waiver of defects in the summons and such waiver results in perfecting the summons as of the date of delivery to the marshal. It is very true that a general appearance brings the party into the litigation as effectively as though there were no defects in summons or service. Not infrequently this has been referred to as a waiver of defects in the summons or the service. But such expressions are to be taken only as meaning that the party cannot, after a general appearance, escape the jurisdiction of the court because of a defect in the process. It does not relate back and cure such defects for all purposes but takes effect generally only as of the time of the general appearance. Ewell v. Chicago & N. W. Ry. Co., C.C.S.D.Iowa, 29 F. 57, 58; 6 C.J.S.Appearances, p. 44, § 14a, and numerous cases cited in notes thereto. The general appearance here in no way affected the right of appellee to thereafter plead the limitation. It simply put him in court from then on for all purposes. The same result would follow had no process ever been issued but he had made his voluntary general appearance upon the day he did here.

III. Amendment of the Summons.

Appellant contends the court erred in denying its motion to amend the summons long after the statute of limitations had run. Obviously, this amendment was intended to relate back and cure the summons as of the date of issue or delivery to the marshal. It could not otherwise have benefited appellant because appellee was then in court through his general appearance. The court properly denied the motion.

Appellant relies upon sections 767 and 777 of title 28, U.S.C.A. Section 767 allows amendments of process where the "amendment will not injure the party against whom such process issues." Clearly, to allow the amendment here and give it an effect of curing the process as of issue or delivery to the marshal would seriously injure appellee by depriving him of a complete bar to the action. Section 777 relates only to defects in form of summons to such amendments as the court may in its discretion allow. As shown above, the defects here were not merely of form, but substantial. The court having exercised

its discretion against allowing the amendment we cannot say such exercise was abused when we consider the effect of the proposed amendment upon appellee.

The judgment is affirmed.

WOODROUGH, Circuit Judge (dissenting).

The government sued J. L. Hecht and others to recover about $53,000 and interest for tax refunds alleged to have been erroneously paid out in the form of treasury checks received by them on May 17, 1929. It had to bring its suit before the expiration of two years after that date, section 610(b), Revenue Act 1928, 26 U.S.C.A. § 1646(b), and on May 11, 1931, well within the limitation period, it filed its petition in the District Court of the United States for the Southern District of Iowa, Davenport Division, together with a praecipe to the clerk to issue summons in the cause and place it in the hands of the marshal for service. The clerk made out the summons and delivered it to the marshal on May 13, 1931, and the marshal duly served it on J. L. Hecht and made return of service. Hecht made his appearance in the court by his attorney before the answer day specified in the summons, stipulated for continuance of the cause, and agreed that he would plead "upon demand of the United States Attorney." Thereafter he made a motion to dismiss the suit as to the main ($40,954.69) item of refund sued for on certain grounds specified in the motion, but without raising any question of the sufficiency of the form of the summons that had been served upon him. There was no ruling on this motion, but on June 16, 1936, Mr. Hecht filed an amended motion to dismiss the action against him. He struck out the allegations in the body of his earlier motion and presented the contention that the summons served on him in 1931 was insufficient and void on account of defects therein and, therefore, the suit had not been "commenced" against him until he appeared therein at a date beyond the two-year period and after the statute of limitations had run against the cause of action. It was so held. The government was denied permission to amend the summons and it appeals from the consequent judgment of dismissal of its suit.

It appears that a rule of court has been in force in the United States District Court for the Southern District of Iowa for many years which provides that all actions at law shall be commenced by filing a petition with the clerk upon which a summons shall be issued and served by the marshal.[1] But the statutes of the state prescribed that actions at law shall be commenced by serving the defendant with a notice signed by the plaintiff or his attorney. The difference between proceeding by notice and proceeding by petition and writ of summons is substantial in its consequences and was recently considered by the Supreme Court in Chisholm v. Gilmer, 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 458. It is clear in the light of that decision and the cases cited, that in so far as the above federal court rule forebade the commencement of law actions by the Iowa statutory notice, it was in violation of the Conformity Act, 28 U.S.C.A. § 724. The federal court in Iowa could not by rule prevent the commencement of actions at law before it by notice in accordance with the Iowa practice, with or without the previous filing of a petition in the court. Id.

---

1. All process shall run in the name of the President of the United States of America, be signed by the clerk and issued under the seal of the court.

2. All writs and process, including the summons, shall bear teste the day they are issued, shall be issued, signed, and sealed by the clerk, upon a praecipe in writing, duly signed and filed by the party, or his attorney, desiring the issuance thereof, and shall have the name of the attorney of the party at whose instance they are issued indorsed thereon.

3. The summons shall be delivered by the clerk directly to the marshal for service and shall be served by the marshal in the manner then prescribed by the state statutes. Upon the service of the summons the marshal shall file the same in the office of the clerk, with his return attached thereto.

4. Actions at law shall be commenced by filing a petition with the clerk upon which a summons shall be issued directed to the defendant, informing him of the name of the plaintiff, that petition has been filed in the office of the clerk of the court wherein the action is brought, naming it. Except as otherwise provided in these rules, and except as provided for in the laws of the United States in force at the time action is sought to be taken in this court, pleadings and practice and procedure, both before and after judgment, shall be as then prescribed in the laws of the state of Iowa.

On the other hand, the federal courts are empowered to issue all writs which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law (28 U.S. C.A. § 377) and no case is cited holding that state laws can prevent the federal court's taking jurisdiction of law actions through issuance and service of the ancient writ of summons upon petition previously filed or that rules of court that provide for acquiring jurisdiction in that way are void. Shepard v. Adams, 168 U.S. 618, 18 S.Ct. 214, 42 L.Ed. 602; Boston & Maine R. R. v. Gokey, 210 U.S. 155, 28 S.Ct. 657, 52 L.Ed. 1002.

A usual incident of commencing actions by the issuance and service of summons is that the petition setting forth the cause of action should be filed in the court before the clerk is required to issue the summons thereon, and, when a petition has been put on file and so made available to the defendant, there is not the same need to incorporate the characterization of the petition or its contents in a summons as is required by the statute to be done in a notice under the other procedure where no petition is necessary to be filed in court before the notice is served. If the federal court had the power to proceed by petition and summons, it would seem that it had power to conform the other incidents of assuming jurisdiction to that procedure and that it would appear unnecessary for it to compel everything to be put into its summonses that the state required to be put in the statutory notices. The court rule here in question for commencement of action by filing a petition and issuing summons thereon, did not require any information concerning the cause of action alleged in the petition to be put into the summons except to inform the defendant of the name of the plaintiff and that the petition had been filed in the office of the clerk of the court where the action was brought, naming it. There is no question of the sufficiency of such a summons to fully satisfy constitutional requirements.

The record is clear that the government did everything the federal court rule required it to do in order to commence its action against Mr. Hecht within the limitation period. It filed its petition and its praecipe and it procured the summons to be timely issued, served upon Hecht and returned by the marshal. The summons was upon the form used in the court for years (doubtless in hundreds of cases) with "Summons" printed thereon twice in very bold type, and it bore teste the day it was issued. It was issued, signed, and sealed by the clerk and the name of the United States attorney was duly indorsed upon it. It informed the defendant that the complaint which he was required to answer was filed by the United States of America and the appellation of the court appeared at length twice on the front and again on the back of the summons, together with the name of the judge of the court and of the clerk, and the answer day was fixed on the first day of the next term of the court. There was no deceit or misinformation in it, or anything apt to mislead the defendant, and that it did its office of a summons completely and effectively in this case, as it had done in possibly a thousand others for years, is made manifest by the timely appearance of Mr. Hecht in the case by his attorney before the answer day named in the summons had arrived, and also by the language used by Mr. Hecht in a motion he made early in the case in which he said: "the summons served on this defendant was delivered to the Marshal" * * * "the record herein including plaintiff's petition and summons issued and served on this defendant disclose that this action was brought, etc."

The duty of the clerk to issue the summons came from the court rule and the summons issued approximated closely to the requirements of the rule. It is argued there was departure because it was not "directed" to defendant Hecht.

It does start out with an old formality of "greeting" from the President of the United States to the marshal, but that in nowise obscures its real business. It says plainly and peremptorily, "Summon * * * J. L. Hecht that he be and appear before the United States District Court for the Southern District of Iowa at Davenport, Iowa, to answer to a petition filed by the United States of America." That is to say, the summons, regarded as a document which has to be delivered to the marshal and acted on by him, contains a traditional and formal greeting to him and commands him to perform a duty imposed on him by statute. In that oblique sense there is a summons directed to him. But in so far as it is a summons to appear in court to answer the complaint of the United States, the monition, warning or notification, the business end of the summons is directed to the defendant Hecht, clear and

peremptory. Hecht knew very well when he got the summons to whom the monition or summons to appear and answer was directed. He knew that he was the one a complaint was filed against and that he was the one that had to appear in the court, and that was the whole meat of the matter. I think the sense of it is that the man who was named as the one required to appear and answer was the one who was summoned. The summons part of it was directed to him and not to the marshal. The marshal got the greeting directed to him, and Hecht got the summons directed to him, and the matter is simply quibbling. Another ground of alleged defect is that the summons failed to name the court in which the action was brought as required by the court rule. Inasmuch as the summons contained the long name of the United States District Court for the Southern District of Iowa, Davenport Division (or at Davenport, Iowa) printed in full three times, it seems to me the point ought to be regarded as frivolous.

It also appears that the summons required defendant Hecht to be and appear before the court to answer the complaint on the 27th day of October, 1931, and it is said that an early statute of Iowa fixed the answer day upon the first day of the next term of court, and a later statute fixed the second day of the term as answer day. It is said the 27th of October, 1931, was the first day of the next term of the federal court. But the summons allowed the defendant Hecht more than three months and a half to make his appearance and answer the complaint and that was ample time. Whether he was given a day more or a day less involved no matter of substance in view of the fact that he did appear before the day set in the summons.

I think that the summons was in such substantial compliance with the requirements of the court rule that it could not be said that there was no summons issued and served thereunder.

Under the state statute where the commencement of actions is by notice given by the plaintiff and not by petition filed and summons issued thereon, the notice which the plaintiff must give is required to contain a characterization of the cause of action and the amount for which judgment will be taken on default. The summons issued by the clerk in this case did not of itself inform defendant what the character of the suit against him was, nor what amount of judgment would be taken in case of default. The defendant was left to find all of that in the petition against him in the court, of which petition the summons did inform him and which he was called on to answer.

Mr. Hecht's amended motion to dismiss the case was not brought on for hearing before the court until January, 1937. It was then heard at the same time with a motion to amend the process which the plaintiff had filed shortly before by leave of court. The motion to amend process was verified under oath and narrated that there were constant negotiations for settlement carried on between Mr. Hecht and the plaintiff during the pendency of the case on account of which the parties had delayed trial of the case several years, and it was alleged that the plaintiff had a just cause of action against the defendant and that the defendant would suffer no prejudice or injury if the amendment was allowed.

An affidavit was filed by defendant Hecht in resistance to the motion to amend, to the effect that, if liability had been established in the government's suit near the time when the petition in the case was filed, Mr. Hecht could have recouped himself for any judgment against him by collecting it from other defendants primarily liable, but that, on account of bankruptcy and death and other causes, such recourse had become lost. He also alleged that he had been advised by his counsel from the beginning that the statute of limitations had run against the plaintiff's complaint and that he had relied thereon and took no action to preserve the claims he would have had at an earlier date against other parties.

But the question whether the statute of limitation had run in the case was for the court to decide. There was no showing in the affidavit that Mr. Hecht had applied for or had been denied an earlier hearing upon that question or upon his motion to dismiss the case. The affidavit contained no suggestion that Mr. Hecht had not received the summons from the United States marshal as shown by the return of the marshal thereon; or that he had failed to read it; or that he failed to understand the command thereof to appear and answer the government's petition at the time specified therein, or that any alleged defect in it had deceived or misled him in any way. The substance of his

showing was merely that the delay in submitting the case to which he had himself contributed would increase his burden if, in the judgment of the court, he owed the plaintiff the money sued for and had to pay it.

Such considerations threw no light on the question whether the motion to amend the process, which was presented at the same time as the motion to dismiss for want of timely process, should 'or should not be sustained. Mr. Hecht's early motion had given the plaintiff and the court to understand that the suit had been commenced by summons served upon Mr. Hecht by the marshal, but that he was contending that it was so commenced too late (other reasons being assigned), and he had waited five years before making his argument to the court that the action was commenced by his appearance and not by summons. The parties were upon at least an equal footing so far as allowing the case to remain long pending was concerned. Both were acquiescent to the pendency and both moved to get a hearing of their respective claims at the same time, and by voluntarily keeping the case pending the parties preserved the rights and obligations of both alike.

The trial court did not find that the plaintiff had lost any right to amend the summons by the parties' mutual acquiescence in the long pendency of the case. On the contrary, it duly accorded plaintiff leave to apply for the amendment after all the delay had taken place. But the court took the position that there was nothing to amend. He said the question was "whether there ever was a summons issued, and directed to the defendant," and he answered the question in the negative. He declared his opinion that the document issued by the clerk was a praecipe. If Hecht had sworn in his affidavit that he had paid no attention to the boldly printed "Summons" or the command to him that he appear and answer, or that he thought there was no communication in it to him, he would not be credited. He did not presume to so swear, though $50,000 was sued for. The court simply adopted and acted upon a fiction. A fiction that not only denied the plaintiff a trial of its claim against the defendant but beclouded the court's judgments for twenty years back.

The court's rule (in force in 1913 and 1937, nearly a quarter of a century), the form of the summonses that were issuing out of the court, the Conformity Act, and the state system for commencing suits by notice were brought up together and presented serious questions for the court's consideration, calling for deliberate action in the case before the court. But for the court in such a situation to adopt and to act upon the fiction that there was no summons in the face of the record, that there was one, which like hundreds or thousands of others similar to it, had effectively performed the office of summons for years, struck a blow at the very foundation of rational judicature. Such action would mean that errors of clerks which in fact affect no one and are unnoticed and trifling, have a potency for wrong beyond all the court's justice. To take up the fiction that there was no summons merely because the clerk did not write up the summons that he issued in a good clerkly fashion, undermines the foundations of jurisdiction and the just powers of courts. It defeats and frustrates rightful judicial power to do justice. The ruling of the trial court, rested as it was on the fiction that the suit was commenced by appearance and that there was no summons, was contrary to the Act of Congress, 28 U.S. C.A. §§ 767, 777, and was error of law reviewable by this court. Even if the summons did lack something that the clerk ought to have put into it, the federal law does not allow the harmless slip of a clerk's pen to wreck precarious justice. When such a clerical fault in a summons is shown to a federal court, and even though the fault has been repeated for years, the court may not act upon destructive fiction instead of the facts, incontinently dismiss the litigants before him, or upset the foundation of the court's work of years. The sensible and positive command of the federal statute is not that a federal court may amend defects and want of form, but that it shall do so. The provisions of 28 U.S.C.A. § 767 are not in conflict. The court's discretion therein referred to is legal discretion, the paramount command to the courts is to disregard defects and want of form and proceed and give judgment according to the right of the cause. That must be so upon every application to amend, including application to amend summons. Every such application presupposes some mistake has occurred. The court's inquiry should be, "Has any one acted on the mistake to change his position so that it would wrong him to correct the mistake?" The court has ample powers conferred upon it to carry out and

make effective the command to proceed and give judgment according as the right of the cause appears.

The Supreme Court of Iowa has held that each of the specific requisites which the statute of that state requires the plaintiff to put into the notice used for commencing suit is of equal rank with the others, and that the failure to include any one is as fatal as the failure to include another. The court appears to have disposed of a case where there was some clerical omission in a notice as though there never had been any notice at all. Rhodes v. Oxley, 212 Iowa 1018, 235 N.W. 919. It is argued that we are bound to follow to the same conclusion in this case, but the federal statute that compels the federal courts to correct defects and want of form in summonses, and commands the courts to proceed to give judgment according to the right, stands like a wall of good sense against it. It may be that some of the states have not accorded such statutory protection to their courts. No similar statute is cited in Iowa. But our powers impose obligations. The federal court cannot be bound to adopt a fiction that Mr. Hecht came into court of his own volition or that he was not summoned. Against all vainly elaborated abstractions that the summons lacked something that summonses ought to have in them is the plain fact that the summons was so fully adapted to do its office of calling Hecht into court that no sensible man would fail to heed it, and Hecht did not fail—he came. After he came he acknowledged in his motion that summons had been issued and served upon him. Such was the fact. The other is fiction.

As to the decision of this court in United States v. Van Dusen, 8 Cir., 78 F.2d 121. That opinion sustained an order of the District Court in Minnesota quashing summons, but it does not appear that the action of this court affected substantial rights. So far as appears, nothing resulted from quashing the summons except an effective admonition to the clerk and the issuance of better summons. The summons in that case was not delivered by the United States marshal into the hands of the defendant as in this case. And the

controlling question in this case, whether to amend the summons, was not considered or decided. This court's consideration of the case was apparently not directed to the inquiry whether the summons involved in the case was adapted to and had performed its office, but rather to abstract discussion concerning what might constitute substance as distinguished from form in a summons. Without declaration upon any substantial right or consideration of the power to amend, the conclusion was expressed that putting the amount sued for into a summons was matter of substance rather than of form. Considered abstractly, of course every statutory requirement is of substance. But if the necessary inference from the case is that, unless some particular "substance" is found in a summons adapted to work and which has worked, the court must act on the fiction that there never was any summons at all, it should be modified in a proper case.

But our question here is as to amendment. More than thirty years ago this court established for this circuit the sound doctrine concerning summonses and defects therein which it is absolutely necessary to adhere to. It was laid down that it is "the special office of a summons * * * to inform a defendant that an action has been instituted against him," and that where the summons has performed its function the court is required to disregard any defect or omission of words which do not affect the substantial rights of the defendant. Ammons v. Brunswick-Balke-Collender Co., 8 Cir., 141 F. 570. The inquiry and the only inquiry in the federal court under the federal statute is, what is the right of the case. If a man has in fact been summoned and so understands and obeys, every defect must be amended on timely application and justice done by according a fair trial of the case.

The case here is that the plaintiff invoked the justice of the court in the mode directed by the court's ancient rule. Through no fault of the plaintiff, but solely from the fault of the court officers, the summons failed of itself to acquaint the defendant with some of the incidents of the plaintiff's petition.[2] But it was a

---

[2] The Supreme Court has just established summonses for universal use in this respect identical with, and generally about like the summons we hold to be nonexistent and not amendable. Their's has a warning in it that in case of default judgment will be rendered as prayed in the complaint, but the warning is not serious because the ad damnums prayed for are usually too preposterous to be put into judgments if defendants never come. Rules of Civil Procedure, rule 4 (b).

truthful call to the defendant and in response to it he came into court where the petition itself was. 'He was not affected by any informality. It is not compatible with a rational administration of justice so near the middle of the twentieth century to turn the innocent litigant out of court upon a mere fiction, or to deny it a trial of its case. Such denial of justice violates the federal acts and should be reversed.